**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

……………………………………………..
:
UNITED STATES OF AMERICA         :
:
    VS.                              :        Criminal No. 3:03cr105 (RNC)
:
CHERYL CAINES                    :        January 10, 2005
:
……………………………………………..

## MEMORANDUM IN AID OF SENTENCING

### I.   BACKGROUND

Cheryl Caines has pled guilty to Count One of a Substitute Information charging her with possession with intent to distribute and distribution of a detectable amount of cocaine base in violation of 21 U.S.C. §846, 841 (a) (1) and 841 (b) (1) (C). As part of the plea agreement, the parties stipulated that the defendant's offense conduct involved at least 50 grams, but less than 150 grams of crack cocaine. A presentence report (PSR) has been completed and Ms. Caines is awaiting sentencing. The Probation Office has calculated Cheryl's offense level as follows:

|  |  |
|---|---|
| Base Offense (§2D.1.1(a) (3)) | 30 |
| Minimal Role   (3B1.2(a)) | -4 |
| Acceptance of Responsibility (§3E1.1) | <u>-3</u> |
| **ADJUSTED OFFENSE LEVEL** | **23** |

Considering her prior record, Cheryl falls within Criminal History Category 1V. Accordingly, her recommended guideline range is 84-105 months.  Neither the Defendant nor the Government has objected to this guideline computation.  Both parties agree that the investigation showed that Ms. Caines did not sell crack herself but rather directed potential buyers to various sellers on Enfield Street.  She also delivered crack to buyers at the request of the various sellers.  She did this to support her own drug habit.  Ms. Caines therefore urges this Court to accept the Government's assessment of her minimal role and grant the proposed four level reduction.  Likewise Ms. Caines urges that this Court accept the Government's assessment of Ms. Caines' acceptance of responsibility and grant a three level reduction in her offense level.  Her decision to plead guilty was done well in advance of any trial scheduled and she completely admitted her involvement in the crimes as charged.

This memorandum is submitted in support of the Defendant's request for a downward departure.

## II.     ARGUMENT

**Point One:     A Downward Departure is Appropriate for a Variety of Reasons**

Neither the Sentencing Reform Act nor the Sentencing Guidelines were designed or intended to eliminate a sentencing court's ability to depart from an established sentencing range in an appropriate case.  The Sentencing Commission's decision to vest broad departure powers in the District Courts is based, in part, on its recognition of the obvious difficulty of prescribing "a single set of guidelines that encompasses the vast range of human conduct potentially relevant to a sentencing decision."
U.S.S.G. § Ch.1 Pt.A(4)(b).

The Second Circuit has frequently underscored the substantial discretion retained by District Court Judges to depart, and the general appropriateness of exercising such discretion.

> [W]e prefer to allow the district courts to exercise their sound judgment in departing from the Guidelines, rather than impose rigid adherence to a table of numbers.  Only by allowing the district courts sensible flexibility can we promote the equally important purposes of just punishment, respect for the law and adequate deterrence set forth in the Sentencing Reform Act.  See 18 U.S.C. §3553(a)(2) and U.S.C. 991(b).

United States v. Correa-Vargas, 860 F.2d 35, 40 (2d Cir. 1988); see also United States v. Galante, 111 F.3d 1029, 1033 (2d Cir. 1977) (sentencing laws are aimed at maintaining

sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors).

### A. The Totality of the Circumstance Removes Cheryl Caines' Case From the Heartland

Although a sentencing Court must adhere to a sentence within the applicable guideline range in a typical case, the Act purposefully does not eliminate all sentencing discretion that has been historically afforded to the Court.  See Koon v. United States, 116 S. Ct. 2035, 2044 (1996).  As such, the Act recognizes the wisdom and necessity of taking individual circumstances into account when imposing each and every sentence.  See 28 U.S.C. Section 991(b)(1)(B).  Thus, the Court may depart from the sentences within the guideline range if it finds that there is an "aggravation or mitigating circumstance" that the Sentencing Commission did "not adequately take into consideration . . . in formulating the Guidelines."  18 U.S.C. Section 3553(b)(1988); United States v. Rogers, 979 F.2d 489, 492 (2dCir. 1992).

For example, an offender characteristic or other circumstance that is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range may be relevant to the determination of sentence if such characteristic or circumstance is present to an unusual degree and therefore distinguishes the case from the "heartland" of cases covered by the Guidelines.  U.S.S.G § 5K2.0.  This inquiry consists of a "refined assessment of the many facts bearing on the outcome, informed by [the

Court's] vantage point and day-to-day experience in criminal sentencing." Koon v. United States, 116 S. Ct. at 2046-47. The Court must also consider whether some aspect of the case "take[s] it outside the Guidelines' 'heartland' and make[s] of it a special, or unusual, case." United States v. Merit, 988 F.2d 1298, 1306 (2d Cir. 1993), cert. denied, 508 U.S. 961, 113 S. Ct 2933, 124 L.Ed.2d 683 (1993).

In fact, it is well established in the Second Circuit that a Court may depart from the Guidelines in imposing sentence "when a number of factors that, when considered individually, would not permit a downward departure, combine to create a situation that 'differs significantly from the 'heartland' cases covered by the Guidelines.'" United States v. Rioux, 97 F.3d 648, 663 (2d Cir. 1996), citing U.S.S.G. § 5K2.0 cmt.; United States v. Jagmohan, 909 F.2d 61 (2d Cir. 1990); United States v. Somerstein, 20 F. Supp 2d 454 (E.D.N.Y. 1998). The district court is afforded substantial discretion in determining whether one or more factors constitutes grounds for a downward departure. U. S. v. Galante, 111 F.3d 1029, 1035-36 (2d Cir. 1997).

Several extraordinary factors and compelling circumstances in Ms. Caines' case when taken both individually and jointly, warrant a downward departure from the sentencing guideline range to permit a sentence of "time-served."

**1.      Ms. Caines Has Made Extraordinary Strides Toward Rehabilitation**

Post-offense rehabilitation has not been adequately considered by the Sentencing Commission when formulating the Sentencing Guidelines and is therefore a valid basis

for departure.  U. S. v. Core, 125 F.3d 74, 77-78 (2d Cir. 1997) ("'awareness of one's circumstances and the demonstrated willingness to act to achieve rehabilitation thereby benefiting the individual and society' can remove a case from the heartland of typical cases, thus constituting a valid basis for departure.")  U.S. v. Williams, 65 F.3d 301, 305-07 (2dCir. 1995) (downward departure based on drug rehabilitation appropriate); U. S. v. Ramirez, 792 F. Supp 9222, 923 (E.D.N.Y. 1992) (downward departure appropriate to foster rehabilitation).

     Ms. Caines spent a significant amount of time during her pre-trial release drug-free.  She was receiving mental health counseling from the Wheeler Clinic and was successfully living at the Salvation Army shelter.  She did experience a significant relapse after her mother's death and upon her return from the funeral began using again.  She made several more attempts at drug rehabilitation and resumed treatment at the Rushford facility on or about December 6, 2004.  Since that time, Ms. Caines has remained compliant with her drug treatment and has begun to search for a job and apply for residence in a "sober house" in the Middletown area.  The partial hospitalization and intensive out-patient program provided at Rushford has been amazingly successful.  This program appears to be working because Ms. Caines now more fully is aware of her substance abuse problem and because she realizes that she needs to take herself away from her old "haunts" within the City of Hartford.  She has begun the process of building trust with her counselors and has realized a new set of supports for her rehabilitation.

Her treatment plan calls for continued intensive out patient services until March of 2005 and beyond.

  2. **Ms. Caines' Mental condition and Cognitive Functions**

Part of the explanation for the delays in the instant case have to do with the results of psychological evaluation and testing done for the Defendant. Ms. Caines was the subject of three competency evaluations before she was found to be competent to enter her guilty plea. The reports of these evaluations are included in the PSR. They significantly agree in several areas:

  a. Ms. Caines suffers from a significant mental psychosis and/or psychiatric disorder. The label for this condition varies with the evaluator. Dr. Fox calls it schizophrenia with paranoia. Dr. Grenier indicates that Ms. Caines has paranoid and schizotypal personality disorder. Whatever the label both Drs. indicate that long-term substance abuse treatment and individual psychiatric treatment and/or hospitalization is recommended.

  b. Ms. Caines functions in the Extremely Low range of intellectual abilities with a Full Scale IQ of 61. This score falls in the mild mental retardation range. Her testing also indicates extremely low range functioning in visual processing and motor functioning.

  c. Ms. Caines shows serious clinical symptoms in the area of emotional function. The testing and evaluations suggest that Ms. Caines has symptoms

that include obsessive worry, stress related disorders, confused thought processes and fears about being around people. They are so persistent and pervasive that she lacks the mental or emotional resources to adequately attend to life's ordinary daily activities, decisions, problem-solving and other matters.

        d.      Ms. Caines' evaluation points to a high probability of a substance dependence rather than a substance use disorder. Her drug use then involves a psychological dependence along with the physical dependence.

        e.      Ms. Caines' evaluation indicates that she suffers from depression. This "sadness" results in loss of appetite, difficulty sleeping and loss of the desire to engage in pleasurable activities.

These five conclusions from the evaluators combine to show that Ms. Caines lives in the world in a significantly different way. These characteristics make treatment difficult but also imperative. There will be ups and downs, successes and failures. She is however extremely vested in her recovery. Her paranoia breeds mistrust and fear, thus making it difficult to ask for help. Her condition makes problem-solving difficult and her ability to make good choices compromised. The conclusions also indicate that Ms. Caines is extremely vulnerable both to street-wise dealers who could exploit her drug dependence to push their product and to potential inmates that would further the power vs. vulnerability cycle if incarcerated.

Taken together then, Ms. Caines urges the Court to consider that there exists, in this case, factors that takes it outside the heartland and which warrant a downward departure from the sentencing guideline range.

**Point Two:  The Extent of the Departure**

Counsel suggests that the Court consider a sentence of time served followed by a term of supervised release with a condition that Ms. Caines complete her drug treatment program at Rushford and that she follow up with all after care programs.  She should also continue to seek and remain in a mental health program that could involve a group home setting as supervised by the Department of Mental Health of the State of Connecticut.  Such a sentence  would fully serve all of the purposes of a criminal sanction while at the same time permitting Ms. Caines to continue her efforts at  successful rehabilitative.  Moreover, such a sentence would be wholly consistent with the other sentences handed down in similar cases after a departure.  See e.g., Galante, 111 F.3d at 1036 (in heroin cases, departure from range of 46-57 months to sentence of time served (8 days), to be followed by 5 years of supervised release subject to 24 months home confinement and 225 hours of community service); Johnson, 964 F.2d at 126 (in bribery case, thirteen level downward departure from guideline range of 46-57 months to sentence of 6 months home confinement); Alba, 933 F.2d at 1119-20 (in cocaine case, departure from range of 41-51 months to six months in a halfway house followed by two years supervised release).  Maier, 975 F.2d at 945 (in heroin case, departure from range of 51-63 months to

probation); <u>Rioux</u>, 97 F.3d at 663 (in extortion case, 10 level departure to probation justified by Defendant's medical condition and charitable and civic good deeds).

## III.   CONCLUSION

For the foregoing reasons, the Defendant, Cheryl Caines, respectfully requests that the Court depart downward from the recommended sentencing range of 84-105 months in prison.

                                        RESPECTFULLY SUBMITTED
                                        THE DEFENDANT, CHERYL CAINES


                                        By___/s/_____
                                            John M. Andreini
                                            44 Capitol Avenue
                                            Suite 402
                                            Hartford, CT 06106
                                            Federal Bar #ct01921
                                            TEL:   (860) 525-9447
                                            FAX:  (860) 246-3727

**CERTIFICATION**

I hereby certify that a copy of the foregoing has been mailed/hand-delivered to all counsel of record and pro se parties this 10th day of January, 2005:

Raymond Miller, Esq.
Assistant United States Attorney
Federal Building
450 Main Street
Hartford, CT 06103

Thomas G. Dennis, Esq.
Federal Defender
10 Columbus Boulevard
6th Floor
Hartford, CT 06106

The Honorable Robert N. Chatigney
United States District Court
450 Main Street
Hartford, CT 06103
(*Courtesy Copy*)

/s/_____
John M. Andreini